## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ZACHRY HOLDINGS, INC., *et al*[1] | ) | |
| | ) | |
| Debtor. | ) | Case No. 24-90377 |
| | ) | |
| | ) | |
| | ) | |
| ZACHRY HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 25-_____ |
| | ) | |
| OMAHA PUBLIC POWER DISTRICT | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## THE DEBTORS' ADVERSARY COMPLAINT FOR
## DECLARATORY RELIEF

Zachry Holdings, Inc. ("ZHI") and its debtor affiliates (the "Debtors"), the debtors in

possession in the above-captioned chapter 11 cases, bring this complaint (the "Complaint")

seeking an order of the Court declaring that (a) as of the filing of this Complaint, (i) the Debtors

are not liable for breach of the Engineer, Procure, and Construct Contract for Omaha Public Power

District Standing Bear Lake and Turtle Creek Generating Stations ("EPC") dated September 21,

2021, as first amended in October 2023, and as further amended in August 2024 (the "Second

Amended EPC"), between Zachry Industrial, Inc., as Contractor ("Zachry") and Omaha Public

---

[1] The last four digits of Zachry Holdings, Inc.'s tax identification number are 6814. A complete list of each of the Debtors in these chapter 11 cases and the last four digits of their federal tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent at https://www.veritaglobal.net/ZHI. The location of the Debtors' service address in these chapter 11 cases is: P.O. Box 240130, San Antonio, Texas 78224

Power District ("OPPD" or "Owner"),[2] (b) the liquidated damages provision of the EPC is unenforceable under applicable law; and, or in the alternative, (c) to the extent the Court finds a breach of the Second Amended EPC has occurred, an order that any administrative claim related to a breach of the Second Amended EPC is currently valued at $0 or at such reduced amount that reflects the actual damages incurred as a result of the delay caused solely by the Debtors, and respectfully state as follows:

## NATURE OF THE REQUESTED RELIEF

1. The Debtors commence this adversary proceeding under Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") "to determine the validity, priority, or extent of" an "interest in property," Bankruptcy Rule 7001(9), section 105(a) of the Bankruptcy Code, and 28 U.S.C. § 2201, seeking a declaratory judgment from this Court related to the EPC.

2. Under the EPC, OPPD hired Zachry to provide services for all activities associated with designing, procuring, installing, starting up, and testing two power plant sites: the Standing Bear Lake ("SBLS") and Turtle Creek Generating Stations ("TCS", together with SBLS, the "Projects") in Omaha, Nebraska.

3. Beginning in September 2021, Zachry began delivering the agreed-upon services. The Projects were soon set back over six (6) months due to Owner-caused delays. In October 2023 the EPC was amended the first time to, among other things, adjust the Guaranteed Substantial Completion Date ("GSCD") for each of the TCS and SBLS Projects—*i.e.*, the time by which Zachry was required to reach Substantial Completion—for each of the Projects to account for delays caused by the Owner.

---

[2] Capitalized terms used herein not otherwise defined have the meanings ascribed to them in the EPC.

4.      On May 21, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the chapter 11 cases.

5.      On August 13, 2024, as a result of additional delays, Zachry and the Owner amended the EPC a second time, by, among other changes, further extending the GSCDs for SBLS and TCS, and amending portions of the Liquidated Damages provision under Article XI of the EPC.  The new GSCDs for SBLS and TCS were set for December 30, 2024 and December 16, 2024, respectively.  At the time of the second amendment to the EPC, the Debtors had already completed approximately 90% of all the work on both Projects.

6.      On September 17, 2024, the Debtors assumed the EPC, as amended in August 2024, pursuant to the *Order (I) Approving Settlement by and Among the Debtors and Omaha Public Power District, (II) Authorizing the Debtors to Amend and Assume (as Amended) the Omaha Public Power District Contract, and (III) Granting Related Relief*.  (Bankr. S.D. Tex. Sept. 17, 2024) [Case No. 24-90377; Docket No. 961].

7.      Following the second amendment and the Debtors' assumption of the contract, the Debtors continued performing under the EPC.  The goal was to finish the Projects early and to obtain agreed on bonus payments for completion before the GSCDs.  But beginning in late October 2024—shortly after the Debtors assumed the contract—the Debtors were prevented from completing the work needed to achieve the GSCDs.  These delays were caused, in significant part, by third-party contractors that the Owner hired to conduct testing and other work necessary to finish the Projects.[3]  These third-party contractors substantially exceeded the projected timelines for conducting their work, had inadequate staff to complete work, made last minute changes to

---

[3] Under the parties' contract, OPPD carved out of Debtor's work scope certain equipment and services defined as "Owner Furnished Equipment" that the Owner would procure from third-party contractors.

Debtors' schedule, and took extensive and unplanned time off throughout November and December 2024, and early January 2025.

8.      To date, the Debtors have completed 99% of the work needed to meet the GSCDs of both Projects, but the Projects remain unfinished due, in large part, to lengthy and ongoing delays caused by two other contractors that the Owner separately hired to complete work essential to project completion.  Specifically, the Owner hired Siemens, a multinational industrial manufacturing company, and Wartsila, a leading equipment manufacturer and servicer for the energy industry, to supply key equipment and components, and to conduct (among other things) essential inspection, testing, and calibration work to commission that equipment, which must be completed before the Debtors can achieve Substantial Completion of TCS and SBLS.  Siemens and Wartsila (together, the "Third-Party Contractors") contracted directly with Owner and answer only to the Owner.  The Debtors have no control over the work or activities of either Siemens or Wartsila.  Indeed, the Debtors cannot even get Siemens and Wartsila to inform the Debtors directly, on a timely basis about their work, they can only do so through the Owner.

9.      Among many other issues, while the Debtors tried to work throughout the holidays in accordance with the EPC schedule agreed to with the Owner, essential Siemens personnel necessary to achieve Substantial Completion took seven (7) consecutive days off and essential Wartsila personnel necessary to achieve Substantial Completion took sixteen (16) consecutive days off, halting completion of the Projects right as the GCSDs approached.  Siemens also took thirteen (13) days longer than scheduled to perform IGV/VGV calibrations to Unit 2 at TCS, failed to communicate known items that would interfere with the Debtors' work, and had inadequate staff to work on Units 1 and 2 at TCS simultaneously.  As the Debtors reported to Owner, as of January 16, 2025, Siemens alone had caused at least thirty-eight (38) days of delays to the agreed-

to schedule at TCS while Wartsila added an additional twenty (20) days of delays at SBLS, not including the tuning issues that to date have added an additional ten (10) days of delays. Between both Projects, the Owner-caused delays have resulted in no fewer than over eighty (80) days of delays since the EPC was assumed. Owner-caused delays continue to this date, and continue to impede the Debtors' ability to achieve the GSCDs.

10.     In accordance with the EPC, and as the Owner has done twice before, the Debtors have sought to modify the GSCDs based on these Owner-caused delays. But although the EPC specifically contemplates extensions of time being granted where work is delayed or interfered with by the Owner or other contractors, OPPD has, to date, refused to extend the GSCDs.

11.     Instead, OPPD sent a notice of anticipatory breach to the Debtors in December. Then on January 10, 2025, the Owner began issuing invoices for liquidated damages purportedly owed to the Owner due to the Debtors' failure to meet the GSCDs for the Projects by the dates set forth in the Second Amended EPC signed in August 2024.

12.     Although, to date, no legal action has been initiated by the Owner, the invoices for liquidated damages are accruing daily and are alleged to be due and payable at the end of each month. The invoices for liquidated damages currently total $25.4 million.

13.     The Debtors dispute that any liquidated damages (and corresponding administrative claim, if any) are owed because, among other reasons, the delays in achieving the GSCDs were caused—and continue to be caused—by the Owner and Third-Party Contractors and the liquidated damages provision under the Second Amended EPC is not unenforceable or reasonable. But the Debtors' repeated requests for a meeting with OPPD to try and resolve this issue consensually have been repeatedly rejected, with OPPD recently replying that it is "not able to commit to an immediate meeting of OPPD and [Debtors'] principals at this time."

14.     The Debtors' chapter 11 cases are nearing completion, and the plan confirmation hearing is scheduled for February 26, 2025.  OPPD's contention that the Debtors purportedly have breached the EPC and owe $25.4 million in liquidated damages as of January 31, 2025, with $900,000 accruing daily, if asserted as an administrative claim, threatens to derail the orderly and timely resolution of these chapter 11 cases and could cause significant harm to the Debtors and the creditors of their estates.  This would be a particularly egregious result given that the delays in achieving the GSCDs are attributable to the actions of the Owner and its chosen Third-Party Contractors.  And, even if they were caused by the Debtors (they were not) the amount does not come close to reflecting actual damages.

15.     Accordingly, the Debtors seek declaratory judgment for an order that as of the date of this filing, the Debtors are not liable for failing to meet the applicable GSCDs resulting in a breach of the EPC, as amended.  And further seek an order that the liquidated damages provisions—which were included in the Second Amended EPC at a time when the Projects were nearly complete and the potential damages for noncompletion by the GSCD was knowable to the Owner—are an unenforceable penalty, regardless of Debtors' alleged delay.  In addition, or alternatively, to the extent the Court finds a breach of the EPC for failing to meet the GSCDs has occurred (which the Debtors respectfully state the Court should not), the Debtors seek an order declaring that any asserted administrative claim based on a purported breach of the assumed EPC be valued at $0 as of the Effective Date, or at such reduced amount that reflects the actual damages incurred from delays solely caused by the Debtors.

## JURISDICTION AND VENUE

16.     This adversary proceeding arises in and relates to the Debtors' cases pending before this Court under chapter 11 of the Bankruptcy Code.

17.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding under 28 U.S.C. § 157(b)(2).   This Court has jurisdiction to grant the relief sought under the Federal Declaratory Judgment Act, 28 U.S.C § 2201, et seq.   The Debtors consent to the entry of final orders or a final judgment by this Court in this adversary proceeding.

18.     Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

19.     The Debtors have made no prior request for the relief requested to this or any other court.

20.     An actual and justifiable controversy exists between the Debtors and the Owner regarding whether the liquidated damages sought by Owner are payable by and whether any such damages are an administrative claim.   Because a controversy exists over whether (i) the Debtors were the sole cause of the delay to achieving the GSCD, (ii) the liquidated damages provision is enforceable, and (iii) even if enforceable, the liquidated damages sought should be allowed as an administrative claim, the Court may grant declaratory relief under Bankruptcy Rule 7001(9), 28 U.S.C. § 2201, and 11 U.S.C. § 105(a).

### THE PARTIES

21.     ZHI is a company organized under the laws of the state of Delaware.   ZHI, together with its Debtor affiliates, is a provider of engineering, construction, maintenance, turnaround, and fabrication services.

22.     OPPD is a public corporation and political subdivision of the State of Nebraska.

## FACTUAL BACKGROUND

### I.   BACKGROUND

####   A.   Overview of Chapter 11 Cases

23.    On May 21, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the chapter 11 cases.  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  On June 4, 2024, the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors pursuant to sections 1102(a)(1) and 1102(b)(1) of the Bankruptcy Code (the "Committee") [Case No. 24-90377; Docket No. 176].  No trustee or examiner has been appointed in these chapter 11 cases.

24.    A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to these chapter 11 cases, is set forth in the *Declaration of Mohsin Y. Meghji in Support of Debtors' Petitions and Requests for First Day Relief* in *In Re: Zachry Holdings, Inc., et al.* (Bankr. S.D. Tex. May 21, 2024) [Case No. 24-90377; Docket No. 7].

####   B.   The EPC

25.    On September 21, 2021, Zachry and Owner entered into the EPC for Contractor to engineer, procure, and construct SBLS and TCS, two electric generating stations and associated substations.  The power stations to be built under the EPC at TCS and SBLS are not meant to serve as the primary sources of electricity for OPPD's customers, rather they are to serve as "peaking energy stations" or "peaker plants," essentially serving as back up when demand surges.  The plants are not designed to run daily, rather, as announced publicly by the Owner, the stations at SBLS and TCS are to be used "only as needed (estimated at less than 15% of the time)."

26.     The EPC contains provisions setting forth, among other things, the Project Schedules, scope of work, deadlines for the Projects, including GSCDs and final completion, the circumstances in which the GSCDs are subject to change, payments owed to the Debtors upon performance, and remedies for the Owner upon non-performance.

27.     The original EPC provided that the GSCDs for SBLC and TCS were May 1, 2023 and August 18, 2023.

28.     Under Article XI of the EPC, OPPD and the Debtors "acknowledge[d] that actual damages incurred by the [Owner] as a result of the Contractor's failure to meet the Guaranteed Substantial Completion Dates and Performance Guarantees ***would be difficult to determine*** and that both parties agree that the liquidated damages provisions in this Article XI are reasonable and ***appropriate measures of the damages*** for such completion and performance shortfalls." As to "Delay[s] in Completion of Work," Article XI(1) set out specific daily amounts for liquidated damages "as a predetermined reasonable and sole and exclusive remedy for such delay": for SBLS, $125,000 per calendar day through May 15, 2023, and $250,000 per calendar day, from May 16, 2023, until the Work is accepted as complete (capped at 10% of the Contract Price); and for TCS $50,000 per calendar day, through September 1, 2023, and $100,000 per calendar day, from September 2, 2023, until the Work is accepted as complete (capped at 10% of the Contract Price).

29.     Importantly, although Article XI (originally and as amended) imposed liquidated damages in the event Contractor does not meet the GSCDs for the Projects, where "Work is delayed by the [Owner] or other contractors . . . Contractor may be entitled to a Change Order if price and schedule are impacted." EPC Article XI(c).

30.     The EPC simultaneously provides for remedies separate and apart from the liquidated damages detailed in Article XI. *See, e.g.*, EPC Article VIII(a) (discussing available

remedies where OPPD terminates the EPC for cause); EPC Article XI(e) (discussing availability
of specific performance).

31.    Under Section 20 of the EPC's General Conditions, Owner is permitted to withhold
payment to the Debtors "as may be necessary in the District's reasonable opinion to protect the
District from loss on account of . . . [a] reasonable doubt that the Contract can be completed for
the balance then unpaid [or] . . . [f]ailure of the Contractor to diligently prosecute the Work and
maintain satisfactory progress required to meet Guaranteed Substantial Completion Date(s) and
Final."  EPC General Conditions, Section 20.  In the event Owner withholds payment from the
Debtors, it must provide the Debtors with written notice.  *Id.*

32.    Under Section 2 of the EPC's General Conditions, the Owner has the right to enter
into contracts with other contractors ("Third-Party Contractors") in connection with work for the
completion of the Projects.  *See* EPC General Conditions, Section 2(a).

33.    But if the Debtors' schedule is impeded by other contractors retained by the Owner,
the Debtors may be entitled to schedule relief from the GSCDs and payment for any losses incurred
by the delay.  *Id.* ("if Contractor shall have their schedule impeded and if the schedule is delayed
[by the Third-Party Contractors] they may be entitled to a Change Order for schedule and cost
relief." *Id.*

34.    Under Section 2(b) of the EPC's General Conditions, if the Debtors' work depends
on the work and operations of Owner or its Third-Party Contractors, then the Debtors shall make
a report to Owner indicating how any Third-Party Contractor's conduct will impact Debtors'
ability to perform under the EPC.  The Owner ***shall*** then take reasonable steps "to correct or cause
the separate contractor or the [Owner] to remedy the stated conditions" that will cause the impact

and the "Contractor may submit a claim for schedule relief . . . ." EPC General Conditions, Section 2(b) (emphasis added).

35.    Under Section 10 of the EPC's General Conditions, if while coordinating with Third-Party Contractors, "Contractor is impeded in their work[,] they may be entitled to a Change Order for cost and schedule relief." EPC General Conditions, Section 10(b).

36.    Section 24 of the EPC's General Conditions acknowledges Debtors are entitled to additional compensation or an extension of time, "[i]n the event that the Contractor, through no fault of its own, encounters delays or extra costs as a result of the total or partial suspension of the Work or unreasonable interference therewith by the [Owner] or its other contractors . . ." EPC General Conditions, Section 24.

37.    As work on the Projects commenced, there were some standard and unforeseen delays that resulted in certain changes to the Project schedules as work advanced. Such delays included OPPD changes to the Project that led to Owner-caused delays of over six (6) months.

38.    Throughout the Projects, and in accordance with its obligations under EPC Articles V(b) and XI (as amended), as well as General Condition 24 of the EPC and others, the Debtors provided OPPD with monthly progress reports on the Work, and weekly updates to the Project Schedule. The Debtors were also in regular communication with the Owner, generally via text and calls, to keep Owner regularly informed of all progress and concerns or issues. Starting in or around September 2024 for TCS, and October 2024 for SBLS, the Debtors prepared micro-schedules twice a week to Owner, Siemens, and Wartsila, regarding status reports on the progress made and updates to the daily schedule.

## C. The Amendment and Assumption of the EPC Contract

39. The EPC was first amended in October 2023, amending the GSCDs for SBLS and TCS from May 1, 2023 to August 8, 2024 and TCS from August 18, 2023 to August 30, 2024. The change to the GSCDs under the first amendment was a negotiated extension to account for the Owner-caused delays of over six (6) months.

40. The EPC was amended again in August 2024—*i.e.*, the Second Amended EPC. Accounting for additional Owner-caused delays, among other changes, under the Second Amended EPC, the parties again revised the GSCDs for SBLC and TCS to December 30, 2024 and December 16, 2024, respectively.

41. The Second Amended EPC also provided for a new liquidated damages provision in the event that the new GSCDs were not met.

42. Under the Second Amended EPC, the liquidated damages provisions for Delay in Completion of Work were revised as follows:

> (i) If the Contractor fails to complete the Work on or before the Guaranteed Substantial Completion Date, for SBLS, as a predetermined reasonable and sole and exclusive remedy for such delay, the Contractor shall be subject to liquidated damages as follows: For each calendar day beyond the Guaranteed Substantial Completion Date for SBLS that the Work is not completed, $350,000 per calendar day through January 29, 2025, and $500,000 per calendar day until the Work is accepted as complete. There shall be an overall sub-cap on this liability equal to ten percent (10%) of the Contract Price. If Substantial Completion has not been achieved by February 28, 2025, then on March 1, 2025, Contractor shall pay the remainder of such maximum liquidated damages applicable to SBLS.

> (ii) If the Contractor fails to complete the Work on or before the Guaranteed Substantial Completion Date, for TCS, as a predetermined reasonable and sole and exclusive remedy for such delay, the Contractor shall be subject to liquidated damages as follows: For each calendar day beyond the Guaranteed Substantial Completion Date for TCS that the Work is not completed, $250,000 per calendar day, through January 15, 2025, and $400,000 per

calendar day until the Work is accepted as complete. There shall be an overall sub-cap on this liability equal to ten percent (10%) of the Contract Price. If Substantial Completion has not been achieved by February 14, 2025, then on February 15, 2025, Contractor shall pay the remainder of such maximum liquidated damages applicable to TCS.

43.     In addition, the as-amended liquidated damages clauses provided for payments for early completion and also provided that "EPC Contractor, OFE Suppliers and OPPD shall meet and confer regarding the status of Acceptance Tests and progress toward meeting the" GSCDs.

44.     Though the original EPC acknowledged that the liquidated damages provision reflected the parties' agreement "that actual damages incurred by the [Owner] as a result of the Debtors' failure to meet the Guaranteed Substantial Completion Dates and Performance Guarantees *would be difficult to determine*," and "that both parties agree that the liquidated damages provisions in this Article XI are reasonable and *appropriate measures of the damages* for such completion and performance shortfalls," the Second Amended EPC does not include this language.

45.     Unlike on September 21, 2021, before construction began, by August 14, 2024 the Owner admits the Projects were 90% complete.  Any potential damages caused by delay were therefore knowable to the Owner at the time of the Second Amendment.  In fact, on information and belief, the Owner had already contracted for supplemental power availability to cover the possibility that the completion deadlines would not be met well before the Second Amendment was executed.  Moreover, by November 2024 for TCS and December 2024 for SBLS—before the GSCDs for the Projects—both sites were operational and capable of generating electricity.

46.     But instead of revising the EPC at the time of the Second Amendment to reflect actual damages, the Owner retained liquidated damages and also imposed drastically higher daily liquidated damages amounts than under the original EPC.  This was not a reflection of actual

damages that could be incurred but a penalty for late work and a display of the imbalance of the bargaining power that the Owner held over the Debtors at that time.

47.     And though the parties had agreed to the new GSCDs under the Second Amended EPC, the Debtors did so without critical information, including the fact that Owner would not require its Third-Party Contractors to maintain the same strict work schedule that was agreed-to by the Debtors.  The Debtors also relied on the fact that, as before, that the Owner would abide by General Conditions Section 2(b), 10, and 24 of the EPC, all of which remained in effect, and adjust the Project Schedule and GSCD for any delays caused by the Owner or Third-Party Contractors. Of course, upon reflection, the Second Amendment incentivizes the Owner to delay completion and abandon the prior practice of extending the GSCDs even though the delays are Owner-caused.

48.     Although Siemens and Wartsila were hired by the Owner as Third-Party Contractors early on in the project, their roles increased considerably as the Projects were nearing completion since they were primarily responsible for the instruction, tuning, and testing required for finalizing plant operations.   Therefore, any delays, non-performance, or errors, had an outsized effect on the Debtors ability to continue, let alone complete, their work—a fact well-known to the Owner.

49.     Following the Second Amendment, and particularly beginning in November 2024 as the GSCDs approached, Siemens and Wartsila caused significant delays to the Projects' completion.  As of January 16, 2025, Siemens alone had caused at least thirty-eight (38) days of delays to the agreed-to schedule, took thirteen (13) days longer to than scheduled to perform necessary calibrations at TCS, and had inadequate staff to complete work at TCS.  And unlike the Owner/Debtor agreed holiday schedule, Siemens took seven (7) days off from December 20 to 27, 2024.  As of January 16, 2025, and as reported to Owner, Wartsila caused at least a twenty (20)

day delay in the Projects schedule, as essential members of its staff took a two-week holiday break from December 22, 2024 to January 6, 2025, again upending the schedule agreed to between Debtor and Owner.  Since January 16, 2025, Owner-caused delays have caused further Project delays.  For example, the Wartsila personnel required to conduct final Selective Catalytic Reduction ("SCR") tuning at SBLS—a pre-condition to completion of the GSCD—unexpectedly left site on January 23 and did not return until February 3, halting critical path progress.  In addition, though the Debtors and the Owner had agreed at the time of the Second Amended EPC that the required bucket and barrel testing on the TCS Project should have taken only five (5) days, it ended up delayed by twenty-one (21) days because of Owner/Siemens-caused delays.

50.     The Debtors kept the Owners regularly apprised of these and other issues and the micro-schedules circulated twice a week reflected the changes based on Third-Party Contractor absence, errors, or delays.  Debtors further attempted to work with Owner on how to address the delays that were outside of their control and impacting the schedule.

51.     Nonetheless, on December 10, 2024, the Owner sent a letter to the Debtors stating that "[b]ased on [Debtors'] projected schedule, [Debtors] will fail to achieve the [GSCD] for [TCS], December 16, 2024, and [SBLS], December 30, 2024, as set forth in Amendment No. 2 of the EPC," and that Contractor's "failure to meet the [GSCD] will place [Debtor] in breach of the EPC."  It further stated the Owner "must pursue all legal rights under the EPC Contract and otherwise under applicable law, including notification of the performance bond sureties for the EPC Contract."  In addition, OPPD stated that "it must protect the interests of its customers in light of [Debtors'] anticipated breach."

52.     The Debtors expressed their disappointment with the Owner initiating a letter campaign and sending a letter asserting anticipatory breach and threatening remedies in lieu of

pursuing a mutually agreeable resolution under the EPC. The Debtors repeatedly asked for face-to-face meetings to discuss the Third-Party Contractor delays, mediation, or any other good faith alternatives to address the delays and complete the work. The Debtors further noted that Owner's approach was "neither legally warranted, nor consistent with the good faith, selfless work of Zachry to complete this job in a timely manner" including how the Debtors had invested significant unreimbursed expenses since the chapter 11 cases began in a good faith effort to finish these Projects.

53.     Because the Owner refused any informal or formal attempts at resolution and demanded a response to their letter, the Debtors responded on January 21, 2025, detailing all of the delays attributable to Siemens and Wartsila, as of January 16, 2025, described above. The Debtors also have attempted to compile records of delays attributable to the Third-Party Contractors and including workdays where necessary personnel from the Third-Party Contractors have not been present to complete outstanding work on the Projects.

54.     Since January 16, 2025, delays continue, including the ten (10) day delay to the SBLS Project because of the leave of absence of the necessary personnel for the final SCR tuning and the twenty-one (21) day delay to the bucket and barrel testing caused by Siemens on the TCS Project.

55.     In addition to the January 21, 2025 letter, the Debtors have repeatedly attempted to engage with OPPD on these issues in order to reach a resolution, including most recently on January 24, 2025 by requesting an in-person meeting to discuss OPPD's contentions and try and find common ground on a potential solution.

56.     Instead, on January 30, 2025, OPPD sent the Debtors a letter rejecting the Debtors' detailed request to amend the GSCDs based on Owner-caused delays. Ignoring the irrefutable

evidence of the Third-Party Contractor delays, OPPD's January 30th letter stated that the GSCDs from the Second Amended EPC governed and the delays were the result of two alleged incidents that Owner claims the Debtors caused: (i) repairs across nine generators in October 2024 caused by raccoon feces that Owner claims is the Debtors' fault for "failing to prevent"; and (ii) one "Zachry human performance incident" on October 31, 2024. Based on these two incidents, Owner issued another invoice to the Debtors for liquidated damages in the amount of $25.4 Million.

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment - No Breach for Missed Deadlines)

57.     The Debtors repeat and re-allege all prior paragraphs of this Complaint as if fully set forth herein.

58.     The Debtors agreed to the GSCDs for the Projects as amended under the Second Amended EPC based on the facts known to them at that time. The Debtors relied, for example, on Owner enforcing the strict work schedule agreed to between the Owner and the Debtors with its Third-Party Contractors. Had the Debtors known at the time of the Second Amendment that the Third-Party Contractors—parties necessary to achieve the GSCDs—would be taking weeks off at that critical time, they would have adjusted the GSCDs accordingly.

59.     The Debtors further relied, as they had with the first and second amendments to the EPC, on the Owner continuing the parties' prior practice of further amending the EPC to revise the dates of the GSCDs to account for Owner-caused delays. Or alternatively, at least honoring General Conditions Section 2(b), 10, and 24 of the EPC, which entitled the Debtors to, among other things "adjustment of the Contract Price and/or additional time" to achieve the GSCDs "in the event [Debtors], through no fault of its own, encounter[] delays or extra costs as a result of the total or partial suspension of the Work or unreasonable interference therewith by the [Owner] or

its other contractors, an error or omission in [Owner]-provided information, or as a result of Force Majeure, or other event allowed by the Contract."  General Conditions Section 24.

60.     The Debtors have maintained and provided to Owner a detailed list of the Owner-caused delays including all those attributable to the Third-Party Contractors.  These include, but are not limited to:

> a.   Delays on Unit 1 at TCS due to lack of support from Siemen on Fuel Oil lube flushing;
>
> b.   Incorrect instructions and inadequate resources from Siemens for TCS Unit 2;
>
> c.   Extensive workdays taken off by Siemens and Wartsila personnel in late December 2024 and early January 2025.

61.     In total, the delays caused by the Third-Party Contractors since the Second Amended EPC was executed (and the December 16, 2024 and December 30, 2024 GSCDs were agreed to) are at least fifty-four (54) days for the TCS and thirty (30) days for the SBLS.

62.     Owner has not and cannot dispute that these Owner- or Third- Party Contractor-caused delays occurred and that the Debtors are "impeded in their work" as a result, yet it has arbitrarily refused to acknowledge its contribution to delays, much less agreed to revise the completion schedules.

63.     With the Projects operational and 99% complete and Debtors continuing to work in good faith to achieve substantial and final completion, the Debtors have and are continuing to fulfill all of their obligations under the EPC.

64.     Accordingly, the Debtors seek an order that, as of the date hereof, the Debtors are not liable for breach of the EPC for failing to achieve the GSCDs for the TCS and SBLS Projects by December 16, 2024 and December 30, 2024, respectively.

### SECOND CLAIM FOR RELIEF
**(Declaratory Judgment - Liquidated Damages Provision is Unenforceable)**

65.     The Debtors repeat and re-allege all prior paragraphs of this Complaint as if fully set forth herein.

66.     At the time of the Second Amended EPC, each of the Projects were approximately 90% complete.  Therefore, actual damages in the event the GSCDs were not met were not difficult to ascertain.

67.     Rather, actual damages caused by delay to the Projects and predictable impacts of the breach were easily knowable to the Owner by August 2024.  The Owner knew the average ongoing operational costs of the Projects.  And, because the power stations are peaker plants meant only to serve as "back up," as needed, and not the primary source of electricity for OPPD's customers, any damage caused by a delay to the GSCD, if any, is easily discernible from the amount Owner actually spends as an alternative to using the plants in the event of a surge.

68.     There was therefore no reason for a liquidated damages provision at all, and certainly not one that is so wildly disproportionate to any actual damages incurred from such delay.

69.     The liquidated damages provision under the Second Amended EPC does not purport to claim that the liquidated damages amount is a reasonable measure of damages or that the actual damages would be difficult to determine.

70.     The liquidated damages clause does not reflect and was not intended to reflect an estimate of damages.  Instead, it serves solely as a penalty for any delay.  Just as the addition of a daily payment for early completion was meant to serve as an incentive.

71.     Through the Second Amendment, the Owner increased the liquidated damages amount for each day beyond the GSCD to oppressive sums.  As compared to the original EPC, it increased liquidated damages for SBLS from $125,000/day initially and then $250,000/day until work is complete (capped at 10% of the Contract Price), to ***$350,000/day*** through January 29, 2025, and ***$500,000/day*** until the Work is accepted as complete (with a "sub-cap" of 10% of the contract price and total cap of 15%) under the Second Amended EPC.  And for TCS, it increased from $50,000/day, and $100,000/day (capped at 10% of the Contract Price) under original EPC to ***$250,000/day*** through January 15, 2025 and ***$400,000/day*** until the Work is accepted as complete (with a "sub-cap" of 10% of the Contract Price and total cap of 15%), among other penalties.

72.     The Projects are currently around 99% complete and the substations are currently producing electricity.  Yet the Owner is demanding nearly $1 million/day from the Debtors (and the estates) for delays caused by the Owner and its Third-Party Contractors.

73.     Because, among other reasons, (i) actual damages were not difficult to ascertain or estimate at the time of the Second Amended EPC, (ii) liquidated damages are disproportionate to the actual harm suffered, and (iii) the liquidated damage provision was intended to penalize the Debtors for delay, not compensate Owners for the reasonable costs of anticipated harm, the Debtors seek an order declaring that the liquidated damages provision of the Second Amended EPC is unenforceable.

### THIRD CLAIM FOR RELIEF
#### (Declaratory Judgment - Reduction of Any Administrative Claim)

74.     The Debtors repeat and re-allege all prior paragraphs of this Complaint as if fully set forth herein.

75.     Because the Debtors have dutifully worked to fulfill their obligations under the EPC and continue to do so, having achieved 99% completion of the Projects, and because the failure to

achieve the GSCDs and final completion has been, and continues to be, caused by documented delays by Third-Party Contractors wholly controlled by the Owner, the Debtors respectfully seek the First Claim for Relief. And because, as set forth in the above alleged paragraphs, the liquidated damages provision of the Second Amended EPC is unenforceable under Nebraska law (which governs the EPC) and as a matter of public policy, the Debtors respectfully seek the Second Claim for Relief.

76.    Should, however, the Court determine that the Debtors breached the assumed contract, and/or that the liquidated damages provision is enforceable, and to the extent the Owner seeks payment in full of the liquidated damages amount related to the purported breach of the assumed contract as an administrative expense, the Debtors assert that Owner's claim for liquidated damages should not be given administrative priority in the full amount; instead, the administrative claim should be limited to only those damages that "provide a benefit to the estate," or an "actual and necessary costs of preserving the estate," as contemplated under 11 U.S.C. § 503(b).

77.    As set forth above, the liquidated damages are unreasonable, punitive, and do not reflect the actual harm suffered. The liquidated damages are not tied to actual damages at all, but rather a daily penalty for a delay in reaching GSCDs—deadlines that are unachievable through no fault of the Debtors. If Owner seeks payment in full of liquidated damages based on an alleged breach of the assumed Second Amended EPC as an administrative expense, it would not benefit, but would instead substantially harm, the Debtors' estates.

78.    The Debtors therefore seek an order declaring that, to the extent such an administrative claim is asserted by Owner, the administrative claim is valued at $0 or at such

reduced amount that reflects the actual damages incurred by the Owner as a result of delays caused solely by Debtors.

## PRAYER FOR RELIEF

79.     WHEREFORE, the Debtors respectfully request an order from this Court under Bankruptcy Rule 7001(9), 28 U.S.C. § 2201, and 11 U.S.C. § 105(a) declaring that:

   a.     As of the date hereof, (i) the Debtors are not liable for breach of the EPC, as amended; and

   b.     The liquidated damages provision (Article XI) of the EPC is unenforceable as a matter of law and public policy;

          and, or in the alternative,

   c.     any administrative claim asserted by the Owner is valued at $0 as of the Effective Date or at such reduced amount that reflects the actual damages incurred by the Owner from delays solely caused by Debtors; and

   d.     all such other relief as the Court may find just and proper.

[*The remainder of this page is intentionally left blank*.]

RESPECTFULLY SUBMITTED this 5th day of February, 2025 in Houston, Texas.

/s/ Charles R. Koster
**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
Email: charles.koster@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Bojan Guzina (admitted *pro hac vice*)
Andrew O'Neill (admitted *pro hac vice*)
Michael Andolina (admitted *pro hac vice*)
111 South Wacker Drive, Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: jason.zakia@whitecase.com
         bojan.guzina@whitecase.com
         aoneill@whitecase.com
         mandolina@whitecase.com

Laura J. Garr (*pro hac vice* pending*)
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 819-8200
Email: lgarr@whitecase.com

*Counsel to the Debtors and
Debtors in Possession*