United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 31, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 24-90377 |
| ZACHRY HOLDINGS, INC., *et al.*, | § § § § | CHAPTER 11 |
| Debtors. | § § § | |
| ZACHRY HOLDINGS, INC., | § § | |
| Plaintiff, | § § § | |
| VS. | § § § | ADVERSARY NO. 25-3025 |
| OMAHA PUBLIC POWER DISTRICT, | § § § | |
| Defendant. | | |

## MEMORANDUM OPINION

Defendant, Omaha Public Power District ("OPPD"), moves to transfer venue in this adversary proceeding under 28 U.S.C. §§ 1404(a) and 1412.[1] Plaintiffs, Reorganized Debtors in the above-captioned case ('Zachry"), oppose OPPD's motion.[2] For the reasons explained below, the Court reserves the priority and administrative status of any judgment as a matter to be determined in Case 24-90377. All other issues in this adversary proceeding are transferred to the District of Nebraska.

## BACKGROUND

On September 21, 2021, Zachry Industrial, Inc., and OPPD entered into the *Engineer, Procure, and Construct Contract for Omaha*

---
[1] ECF No. 13.

[2] ECF No. 24.

*Public Power District Standing Bear Lake and Turtle Creek Generating Stations* (the "Contract").[3] Under the Contract Zachry Industrial agreed to engineer, procure, and construct two electric generating stations and associated substations.[4] These were the Standing Bear Lake Station ("SBLS") and the Turtle Creek Station ("TCS," and together with SBLS, the "Projects").[5] The Contract contained schedules for completing the Projects, including Guaranteed Substantial Completion Dates.[6]

The Contract contains a choice-of-law clause that provides that the laws of the State of Nebraska will govern the Contract and any disputes arising thereunder.[7] The Contract also contains a forum-selection clause, designating "the District Court of Douglas County, Nebraska and the United States District Court for the State of Nebraska" as the fora for any disputes.[8] The Contract was first amended in October 2023 to extend the Completion Dates for one of the Projects.[9]

In May 2024, Zachry commenced Chapter 11 proceedings in this Court.[10] During the course of the bankruptcy, the parties amended the Contract for a second time in August 2024, extending the Completion Dates for the Projects.[11] The Second Amendment included a liquidated damages clause.[12]

---

[3] ECF No. 24, at 4.

[4] *Id.*

[5] *Id.*

[6] ECF Nos. 13, at 5–6; 24, at 4.

[7] ECF Nos. 13, at 4; 24, at 4.

[8] ECF No. 13, at 4.

[9] ECF No. 24, at 5.

[10] Case No. 24-90377, ECF No. 1.

[11] Case No. 24-90377, ECF No. 809, at 4.

[12] ECF Nos. 13, at 4; 24, at 5.

The Court approved Zachry's assumption of the Contract, as amended, in September 2024.[13]

In December 2024, OPPD sent Zachry a notice of anticipatory breach of the Contract.[14] And in January 2025, OPPD began issuing Zachry invoices for liquidated damages it allegedly owed due to its failure to meet the Completion Dates for the Projects set forth in the Second Amendment of the Contract.[15]

On February 5, 2025, Zachry initiated this adversary proceeding, seeking a declaratory judgment that (1) Zachry did not breach the Contract, and (2) the liquidated damages provision is unenforceable.[16] Alternatively, if Zachry did breach the Contract and the liquidated damages provision is enforceable, Zachry seeks a declaratory judgment that OPPD's claim is not entitled to administrative priority.[17]

On February 15, 2025, OPPD filed an administrative expense application in the main bankruptcy case, seeking damages under the Contract.[18] On March 21, 2025, OPPD responded to Zachry's adversary complaint by filing (1) a motion to dismiss for failure to state a claim,[19] (2) a motion to withdraw the reference,[20] and (3) a motion to transfer venue.[21] On March 27, 2025, the parties entered into a stipulation and agreed order abating OPPD's administrative expense application until

---

[13] Case No. 24-90377, ECF No. 961.

[14] ECF No. 1, at 5.

[15] *Id.*

[16] *Id.* at 17–20. Zachry later amended its complaint and added a breach of contract claim against OPPD and a claim for the breach of duty of good faith and fair dealing. ECF No. 22.

[17] *Id.* at 20–21.

[18] Case No. 24-90377, ECF No. 2176.

[19] ECF No. 11.

[20] ECF No. 12.

[21] ECF No. 13.

Zachry's liability is determined on a final basis.[22] Zachry's Chapter 11 plan became effective on April 10, 2025.[23]

On July 9, 2025, the Court held a hearing on OPPD's motion to transfer venue and took the matter under advisement.[24] And on September 2, 2025, the parties entered into a stipulation and agreed order requesting the Court to defer ruling on the motion to transfer venue until October 31, 2025.[25]

## I. JURISDICTION & VENUE

28 U.S.C. § 1334 provides the District Courts with jurisdiction over this proceeding. 28 U.SC. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has authority over this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (B). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## II. LEGAL STANDARD

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Motions to transfer venue in adversary proceedings are governed by 28 U.S.C. § 1412, not 28 U.S.C. § 1404, regardless of whether the action involves a "core" or "related to" proceeding. *Walker v. Directory Distrib. Assocs. (In re*

---

[22] ECF No. 14.
[23] ECF No. 2431.
[24] ECF No. 73.
[25] ECF No. 84.

*Directory Distrib. Assocs.)*, 566 B.R. 869, 877 (Bankr. S.D. Tex. 2017). "Nonetheless, courts apply essentially the same factors in analyzing transfers under §§ 1404(a) and 1412." *Campbell v. Williams*, No. 1:14-cv-097, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015).

Both statutes consider "the interest of justice" and "the convenience of the parties. 28 U.S.C. §§ 1404(a); 1412. The only difference is that section 1412 is disjunctive, and the movant only needs to show that the transfer is either in "the interest of justice" or "for the convenience of the parties." *Schouten v. GEA Farm Techs., Inc. (In re Schouten)*, 657 B.R. 531, 538 (Bankr. N.D. Tex. 2024). And "choosing one transfer provision over the other generally has no effect on the ultimate transfer determination." *Campbell*, 2015 WL 3657627, at *2.

Typically, when ruling on a motion to transfer venue, courts evaluate various private and public interest factors. *See Atlantic Marine Const. Co v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). However, when the parties' contract contains a valid forum-selection clause, "the calculus changes." *Id.* at 63. By agreeing to a forum-selection clause, a party waives their right to challenge the designated forum as inconvenient or less convenient for them or their witnesses. *Id.* at 64. The court does not consider arguments about the parties' private interests and must find that the private interests weigh entirely in favor of the parties' preselected forum. *Id.*

The Supreme Court has identified the relevant public interest factors as (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law.[26] *Id.* at 63 n.6. However,

---

[26] In bankruptcy cases some courts also consider seven factors in considering whether the transfer is in the interest of justice. *Walker v. Directory Distrib. Assocs. (In re Directory Distrib. Assocs.)*, 566 B.R. 869, 878 (Bankr. S.D. Tex. 2017). These factors are: (1) economics of estate administration; (2) presumption in favor of the "home court"; (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders, by those familiar with its laws; (6) enforceability of any judgment rendered; (7) plaintiff's original choice of forum. *Id.*

these factors will rarely defeat a transfer motion, and the practical result is that a forum-selection clause should control except in unusual circumstances. *Id.* at 64.

The presence of a forum-selection clause also alters the burden of proof for a motion to transfer venue. *Id.* at 63. In a typical case, the movant bears the burden of proof and must establish "good cause" for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). However, in a case where a plaintiff defies a forum-selection clause, the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine* 571 U.S. at 63.

The Supreme Court's jurisprudence indicates a strong policy in favor of enforcing forum-selection clauses in contracts. *See e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Indeed, absent fraud, undue influence, or unequal bargaining power, freely negotiated private agreements should be given full effect. *Zapata*, 407 U.S. at 12–13. And forum-selection clauses should be "given controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 60.

It is noteworthy that the forum-selection clause pertains to the Contract itself. The priority of any claim in a bankruptcy case is extracontractual. The determination of the priority of a claim is within the Bankruptcy Court's exclusive jurisdiction. Jurisdiction over the priority of claims is governed by 28 U.S.C. § 1334(a). The priority issue will be retained as a main case issue. Jurisdiction over the balance of the disputes is governed by 28 U.S.C. § 1334(b). Subsection (a) jurisdiction is exclusive to the Bankruptcy Court. Subsection (b) jurisdiction is not exclusive.

### III. DISCUSSION

OPPD argues that transfer of this adversary proceeding under 28 U.S.C. § 1412 is required in this case due to the forum-selection clause

in the Contract and that transfer of this adversary proceeding is in the interest of justice.[27] Zachry opposes transfer, arguing that the Court should exercise its discretion and not enforce the forum-selection clause and that the interest of justice does not support transfer.[28] The parties' also dispute whether the adversary proceeding concerns core or non-core matters, with Zachry arguing the former and OPPD arguing the latter.[29]

As a preliminary matter, the adversary proceeding concerns core matters. *See* 28 U.S.C. § 157. The Contract that is at the heart of this dispute was amended by the parties and assumed by Zachry post-petition.[30] OPPD's administrative expense claim in Zachry's main case is based on alleged breaches of the Contract.[31] The Fifth Circuit has instructed that "[f]ollowing the confirmation of a Chapter 11 reorganization plan, bankruptcy jurisdiction is limited to matters "pertaining to the implementation or execution of the plan." *In re Chesapeake Energy Corp.*, 70 F.4th 273, 281 (5th Cir. 2023) (quoting *In re Craig's Stores of Tex., Inc.*, 266 F.3D 388, 390 (5th Cir. 2001)). In *Chesapeake Energy*, the court stated "[f]or instance, a reorganized debtor often must resolve, post-confirmation . . . administrative [expense] claims . . . all of which fall within 'core' bankruptcy jurisdiction." *Id.* While it is undisputed the Contract is governed by Nebraska law, the state-law basis of a claim does not per se render a matter non-core where resolving the state-law claims is necessary to adjudicating a proof of claim. *In re Moore*, 739 F.3d 724, 728 (5th Cir. 2014).

However, the fact that this is a core matter is not dispositive regarding OPPD's motion to transfer venue. As noted above, the Supreme Court favors enforcing forum selection clauses absent exceptional circumstances. *Atlantic Marine*, 571 U.S. at 60. Zachry has

---

[27] *See* ECF No. 13, at 10–18.

[28] ECF No. 24, at 25–32.

[29] ECF Nos. 24, at 9–16; 31, at 4–8.

[30] Case No. 24-90377, ECF No. 961.

[31] Case No. 24-90377, ECF No. 2176.

not alleged that the forum-selection clause was the product of fraud or overreaching or that enforcement of the clause would be unreasonable. The Court finds that the forum-selection clause in the Contract was the product of arms-length negotiations by sophisticated parties. Thus, it finds that the forum-selection clause is valid and enforceable.

Because the forum-selection clause is valid, Zachry bears the burden of demonstrating that transferring venue in this adversary proceeding is not in the interest of justice. *Atlantic Marine,* 571 U.S. at 63–64. And the Court does not consider Zachry's private interests or its arguments about the convenience of the parties. *Id.* at 64. Those were decided in favor of transfer when the parties entered into the Contract that contained a forum selection clause. *Id.*

The first public interest factor, the administrative difficulties flowing from court congestion, is neutral. The parties briefing did not examine this factor in depth. However, after an examination of the most recently published judicial caseload profile statistics on the United States Courts website, the Court finds that there are insubstantial differences in court congestion between the Southern District of Texas and the District of Nebraska.[32]

The second public interest factor, the local interest in having localized controversies decided at home, weighs in favor of transfer to Nebraska. OPPD contends that Nebraska has a local interest in this dispute because the allegedly-breached Contract is governed by Nebraska law and concerns the construction of two power plants in the Omaha metropolitan area.[33] Zachry argues that this adversary proceeding "involves bankruptcy code issues and could affect Zachry's liability under the Plan.[34] Zachry also argues that OPPD's allegations

---

[32] U.S. CTS., TABLE N/A—U.S. DISTRICT COURTS–COMBINED CIVIL AND CRIMINAL FEDERAL COURT MANAGEMENT STATISTICS (JUNE 30, 2025), https://www.uscourts.gov/data-news/data-tables/2025/06/30/federal-court-management-statistics/n-a-1.

[33] ECF No. 13, at 15.

[34] ECF No. 24, at 31.

that prompted this adversary proceeding "call into question the reputation of Zachry and its employees."[35]

Zachry's arguments are not compelling. This adversary proceeding concerns a contract dispute between a public corporation and political subdivision of the State of Nebraska and a Texas-based engineering and construction company. The dispute centers around the acts or omissions of the Texas company while constructing power plants in Nebraska. While true that this adversary proceeding may affect Zachry's liability under the plan and its reputation, Nebraska has a stronger local interest in this dispute.

The third and final public interest factor, the interest in having the trial of a diversity case in a forum that is at home with the law, also is neutral. While this Court is not sitting in diversity, as its jurisdiction is founded on 28 U.S.C. § 1334, under the Contract's choice-of-law clause, this Court would apply state substantive law in this adversary proceeding in a similar manner to a district court sitting in diversity.

It is undisputed that under the Contract's choice-of-law clause Nebraska law controls. However, federal judges routinely apply the law of states other than the one in which they sit. *In re TikTok, Inc.*, 85 F.4th 352, 365 (5th Cir. 2023). In this adversary proceeding, the breach of contract dispute and the dispute regarding the enforceability of the liquidated damages clause, do not contain any "exceptionally arcane features of [Nebraska] law that are likely to defy [the] comprehension" of this Court. *Id.*

While the public interest factors provided by the Supreme Court in *Atlantic Marine* are relevant considerations, the underlying case was not a bankruptcy case. Zachry argues that the Court should not enforce the forum-selection clause because there is a strong public policy interest in the ability of bankruptcy courts to resolve statutorily core proceedings.[36]

---

[35] *Id.*

[36] ECF No. 24, at 23.

Although such a policy interest may exist in other cases under different circumstances, it is not particularly strong in this case. This is a dispute regarding a contract governed by Nebraska state law. The Contract, including its forum selection clause, was assumed by Zachry post-petition. While the Court commends Zachry and its counsel for their diligence which has contributed to the success of its reorganization, Zachry has not demonstrated that "transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine* 571 U.S. at 63.

## IV. CONCLUSION

For the reasons explained above, the Court retains the priority and administrative status disputes. Venue is transferred as to all other matters. A separate order will issue.

SIGNED 10/31/2025

_____
Marvin Isgur
United States Bankruptcy Judge